UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
P.D.,

                                  Plaintiff,                Case No.: 24 Civ.778

        -against-

                                              **COMPLAINT FOR**
                                            **INJUNCTIVE AND**
ANN MARIE T. SULLIVAN, MD, in her official     **DECLARATORY RELIEF**
capacity,
                               Defendant.
------------------------------------------------------------------x

      Plaintiff, identified herein as "P.D.", by his attorneys The Bellantoni Law Firm, PLLC, for

his Complaint for, *inter alia,* Injunctive and Declaratory Relief, respectfully states:

**NATURE OF THE ACTION**

      1.     This is an action for declaratory, injunctive and other relief, to include presumed

monetary damages in at least a nominal amount, costs, disbursements, and reasonable statutory

attorney's fees pursuant to 42 U.S.C. 1988, for continuing and imminent irreparable harm to

Plaintiff arising from violations to their constitutional rights as protected by the Second and

Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C.  1983.

**JURISDICTION AND VENUE**

      2.     Jurisdiction in this court is proper pursuant to 28 U.S.C. 1331 in that this action

arises under the United States Constitution and laws of the United States, and under 28 U.S.C.

1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes,

ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or

immunities secured by the United States Constitution.

1

3.      This action seeks relief pursuant to 28 U.S.C.  2201, 2202, and 42 U.S.C.  1983, 1988. Venue in this district is proper pursuant to 28 U.S.C.  1391.

**THE PARTIES**

4.      Plaintiff P.D. ("Plaintiff") is a citizen of the United States and a resident of the State of Westchester County, New York. Due to the medically sensitive and confidential nature of the allegations contained herein, Plaintiff is proceeding under his initials and anonymously.

5.      Defendant ANN MARIE T. SULLIVAN, MD ("Commissioner Sullivan") sued herein in her official capacity, is the Commissioner of the New York State Office of Mental Health (OMH).

6.      In that capacity, Commissioner Sullivan has authority to enforce the challenged statutes, policies, and procedures implemented by the  New York State Office of Mental Health ("OMH"), which encompasses the New York State Office of NICS Appeals and Safe Act ("SAFE Act Office") - a subdivision, department, and/or agency within OMH, and is a proper party to be enjoined by the Court from enforcing the challenged statutes, policies, and procedures.

**STATUTORY FRAMEWORK**

7.      The Federal Brady Handgun Violence Prevention Act of 1993 ("Brady Act" prohibits any person from selling or otherwise disposing of any firearm or ammunition to any person who has been involuntarily "committed to a mental institution" (18 U.S.C. section 922 (d)(4)) and further prohibits any person who has been involuntarily "committed to a mental institution" from shipping or transporting in interstate or foreign commerce, or possessing in or affecting commerce, any firearm or ammunition; or receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. See, 18 U.S.C. section 922 (g)(4);  14 NYCRR 543.1(a).

8.      Under the Federal NICS Improvement Amendments Act of 2007, Public Law 110-180, section 105 ("NARIP"), the Brady Act was amended to establish the National Instant Criminal Background Check System (NICS). 14 NYCRR 543.1(b).

9.      The NARIP was developed to improve the completeness, automation, and transmission of records to state and federal systems used by the NICS. These include records of criminal history, felony convictions, warrants, protective orders, convictions for misdemeanors involving domestic violence and stalking, drug arrests and convictions, mental health adjudications, and other information that may disqualify an individual from possessing or receiving a firearm under federal law.[1]

10.     The NICS Index contains records provided by local, state, and federal agencies about persons prohibited from receiving firearms under federal law.

11.     NICS contains records concerning certain events, such as criminal convictions and mental health adjudications that may disqualify a person from purchasing a firearm.

12.     All records in the NICS Index are considered "federally disqualifying records" and will prohibit the transfer of a firearm. 14 NYCRR 543.1(b).

13.     The 2007 amendments also require participating states, in exchange for receiving federal funds for such reporting, to establish a "certificate of relief from disabilities" process to permit a person who has been or may be disqualified from possessing a firearm pursuant to 18 U.S.C. section 922 (d)(4) and (g)(4) to petition for relief from that disability. 14 NYCRR 543.1(b).

***The Gun Control Act – 18 USC 922(g) – Mental Health Disqualifying Events / Conditions***

14.     The Gun Control Act (GCA), codified at 18 U.S.C. 922(g), makes it unlawful for certain categories of persons to ship, transport, receive, or possess firearms or ammunition, to

---

[1] https://bjs.ojp.gov/programs/nics-improvement-amendments-act#7k6m7f

include any person, including individuals who have been adjudicated as a mental defective or *have been committed to any mental institution*.[2]

15.     Under federal law, "Committed to a mental institution" means "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. 27 C.F.R. 478.11.

16.     Under 27 C.F.R. 478.11, the term *does not include* a person in a mental institution *for observation or a voluntary admission* to a mental institution."

17.     New York State Mental Hygiene Law 9.39 is used to admit individuals to a hospital solely for emergency observation and evaluation as a person "alleged" to have a mental illness.[3]

18.     An admission under MHL 9.39 is not a formal adjudication that an individual suffers from a mental disease or defect.

*NYS Office of Mental Health Transmission of Mental Health Records to NICS*

19.     New York Mental Hygiene Law 7.09[4] authorizes the Office of Mental Health (OMH) to collect, retain, modify, or transmit data or records for inclusion in the NICS system for the purpose of responding to NICS queries regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 U.S.C. 921(a)(3).[5]

---

[2] https://www.atf.gov/firearms/identify-prohibited-persons
[3] "The director of any hospital maintaining adequate staff and facilities for the observation, examination, care, and treatment of persons *alleged to be* mentally ill and approved by the commissioner to receive and retain patients pursuant to this section may receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others…" (emphasis added).
[4] NY MHL 7.09(j)(1).
[5] 14 NYCRR § 543.1(c).

20.     The records that OMH is authorized by law to collect, retain, modify, or transmit *are expressly limited to* persons who have been ***involuntarily committed*** pursuant to article 9 or 10 of the Mental Hygiene Law, article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act.[6]

21.     Under MHL 7.09 (j)(1) the OMH Commissioner [Defendant], in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such data or records to (1) DCJS or to the FBI Criminal Justice Information Services Division (CJIS) for the purposes of responding to queries to the NICS system regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 USC 921(a)(3), in accordance with applicable federal laws or regulations, or (2) DCJS, which may re-disclose such data and records only for determining whether a license issued pursuant to Penal Law 400.00(11) should be denied, suspended or revoked or for determining whether a person is no longer permitted under federal or state law to possess a firearm. **Such records**, which may not be used for any other purpose, **shall include only** names and other non-clinical identifying information **of persons who have been involuntarily committed to a hospital** pursuant to MHL Article 9.[7, 8]

22.     The records transmitted to NICS and CJIS[9] by OMH are considered by NICS to be "federally disqualifying records" and will prohibit the transfer of a firearm to such individual. 14 NYCRR 543.1(b).

---

[6] 14 NYCRR § 543.1(c) (emphasis added).

[7] "[O]r section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter." NY MHL § 7.00(j)(1).

[8] Such records, which may not be used for any other purpose, shall include only names and other non-clinical identifying information of persons who have been involuntarily committed to a hospital pursuant to article nine of this chapter, or section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter.

[9] References to NICS and CJIS are collectively referred to hereafter as "NICS".

5

***"Committed to a Mental Institution"***

23.     Under federal law, a person who  has been "committed to a mental institution" is prohibited from receiving, possessing, transferring, and purchasing firearms. 27 C.F.R.  478.11

24.     Under 27 C.F.R.  478.11, "Committed to a mental institution" means, "A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. ***The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.***"  (emphasis added).  NYS MHL 9.39 is an admission for ***observation.***

25.     Upon being contacted by a Federal firearm licensee (FFL) prior to transferring a firearm, NICS will provide information on whether a person is prohibited from receiving or possessing a firearm under State or Federal law. 14 NYCRR 543.1(b).

26.     Prior to the transfer of a firearm through an FFL, an individual is required to complete ATF Form 4473, "Firearms Transaction Record" (Form 4473). [See, Ex. 1].

27.     Question 21(f) of Form 4473 is, "Have you ever been adjudicated as a mental defective OR have you ever been <u>committed</u> to a mental institution?" (emphasis added).[10]

28.     The Form 4473 "NOTICES, INSTRUCTIONS, AND DEFINITIONS…Question 21(f)" provides,

> **"Committed to a Mental Institution:** A formal commitment of a person to a mental question by a court, board, commission, or other lawful authority. The term Permanent resident aliens and aliens legally admitted to the United States

---

[10] Upon performing a background check, NICS will provide the FFL with one of 3 responses: "Proceed", "Deny" or "Delay". If an individual is listed in the NICS database as a person prohibited from purchasing, possessing, and/or receiving firearms (a "prohibited person"), NICS will issue a "Deny", which indicates to the FFL that the individual is prohibited from receiving and/or possessing firearms under state or federal law. A "Deny" response prohibits the FFL from transferring a firearm to such individual.

pursuant includes a commitment to a mental institution involuntarily. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. **The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.** (emphasis added). [Ex. 1].

29.     An individual who has been admitted to a mental institution voluntarily has neither been "Committed to a Mental Institution" nor "involuntarily committed."

30.     An individual who has been admitted to a mental institution for "emergency observation and evaluation", whether voluntarily or not, has neither been "Committed to a Mental Institution" nor "involuntarily committed." See, MHL   9.39, 27 C.F.R. 478.11; see also, *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 314 (W.D.N.Y. 2018) (the term "committed to a mental institution" "does not include [the placement of] a person in a mental institution for observation or a voluntary admission to a mental institution.").

31.     Under MHL 9.39, an individual "Emergency admissions for immediate observation, care, and treatment", a hospital "may receive and retain therein as a patient for a period of fifteen days any person **alleged to have a mental illness** for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others."[11](emphasis added).

32.     Individuals admitted under MHL 9.39 are only **alleged** to have a mental illness and are retained for emergency observation, care and/or treatment.

33.     An admission under MHL 9.39 "Emergency admissions for immediate observation, care, and treatment" does not fall within the definition of having been "Committed to a Mental

---

[11] "Likelihood of serious harm" shall mean: 1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear or serious physical harm." MHL § 9.37 (b).

7

Institution." Even if a court were to determine that there was "reasonable cause" to confine the individual under MHL 9.39, "such order entered by the court shall not be deemed to be an adjudication that the patient is mentally ill, but only a determination that there is reasonable cause to retain the patient for the purposes of this section." MHL 9.39(a)(2).

34.     An admission under MHL 9.39 is ***not a finding or adjudication*** (formal or otherwise) that an individual ***actually suffers from*** a mental illness.

35.     Persons in a mental institution for observation and/or on a voluntary basis are not within the purview of the federal firearms statute and should not be reported as firearms prohibited by New York State.

36.     Most importantly, under MHL 9.39(a)(2), even if a court were to determine that there was "reasonable cause" to confine an individual under MHL 9.39, "such order entered by the court **shall not be deemed to be an adjudication that the patient is mentally ill**, but only a determination that there is reasonable cause to retain the patient for the purposes of this section." (emphasis added).

37.     No New York State or federal law authorizes OMH to collect, retain, modify, or transmit data or records for inclusion in the NICS system of individuals who were only subject to "emergency observation and evaluation," **alleged to be** mentally ill, and not converted to an "involuntary commitment" in a mental health facility under, e.g. MHL 9.37.

38.     An individual identified in State mental health database and/or the NICS database as having been "involuntarily committed to a mental institution" will be prohibited from purchasing or receiving any firearm so long as their information is no longer maintained in the State mental health database and /or the NICS database.

**OMH: Improper Transmission of Mental Health Records to the NYSP and NICS**

39.    OMH and the SAFE Act Office (collectively "OMH") have a policy and procedure of transmitting the mental health records and personal identifying information to NICS of individuals who were not involuntarily committed (the "Policy") and/or have suffered no event disqualifying them under federal or state law from possessing firearms.

40.    The records transmitted to NICS and the FBI CJIS by OMH are considered by NICS to be "federally disqualifying records" and will prohibit the transfer of a firearm to such individual. See, 14 NYCRR 543.1(b).

41.    The OMH policies enforced and implemented by Defendant require and/or cause the transmission to NICS the records of people who were admitted to a hospital only for "emergency evaluation and observation" under MHL 9.39.

42.    Defendant only has the authority to collect, retain, modify, or transmit records pertaining to people who have been **involuntarily committed** pursuant to MHL Article 9 or 10, article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act.[12]

43.    Maintaining and/or reporting information related to individuals who have been admitted under MHL 9.39 and released is outside of the scope of the authority of OMH and the SAFE Act Office.

44.    Communicating to NICS and other agencies that individuals admitted under MHL 9.39 were "involuntarily committed" and/or "adjudicated as mentally ill" for purposes of identifying such individuals as prohibited from firearm possession under 922(g), is a false representation of that individual's firearm eligibility status.

---

[12] 14 NYCRR § 543.1(c) (emphasis added).

45.     Written communications from OMH and the SAFE Act Office acknowledge:

"The records which OMH transmits are **limited to persons** who have been **involuntarily committed** to a psychiatric hospital pursuant to Article 9 or 10 of the NYS Mental Hygiene Law (MHL), Article 730 or Section 330.20 of the NYS Criminal Procedure Law, Section 402 of or 508 of the NYS Correction Law or Sections 322.2 or 353.4 of the NYS Family Court Act."

(emphasis added).

46.     By collecting, retaining, modifying, and/or transmitting records pertaining to people who were only admitted for evaluation and observation under MHL 9.39, the State is falsely identifying to NICS that such individuals, like Plaintiff, were "involuntarily committed in a mental institution" for purposes of identifying them as persons prohibited from possessing firearms, which they were not.

47.     Individuals whose personal identifying information is retained in the State mental health database for NICS reporting will be permanently barred by NICS from purchasing, possessing, and/or receiving firearms permanently and/or until Defendant corrects and/or removes such records from the State database.

48.     Defendant's enforcement of such policies and procedures constitutes a total and absolute barrier to the exercise of Second Amendment rights by individuals admitted to a hospital under MHL 9.39, like Plaintiff.

49.     Defendant's enforcement of such policies and procedures violates the Second Amendment, as applied to the states through the Fourteenth Amendment.

50.     There is no historical tradition in this Nation of barring the possession of Arms for self-defense purposes, including firearms, of individuals who are merely alleged to have a mental illness and/or merely subject to a mental health evaluation.

***MHL 7.09(j) is Overbroad and Violates the Second and Fourteenth Amendments, As Applied***

51.     Under MHL 7.09(j)(1) the commissioner, in cooperation with other applicable state agencies, ***shall*** collect, retain or modify data or records, and ***shall*** transmit such data or records: (i) DCJS or FBI/CJIS for the purposes of responding to queries to NICS regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 USC 921(a)(3) or (ii) to DCJS which may re-disclose such data and records only for determining whether a license issued pursuant to section 400.00 of the penal law should be denied, suspended or revoked, under subdivision eleven of such section, or for determining whether a person is no longer permitted under federal or state law to possess a firearm. (cleaned up) (emphasis added).

52.     Such records, which may not be used for any other purpose, shall include only names and other non-clinical identifying information of persons ***who have been involuntarily committed to a hospital pursuant to article nine*** of this chapter…. (cleaned up). MHL 7.09(j)(1).

53.     A person admitted under MHL 9.39 is only alleged to have a mental illness and is admitted for emergency observation, care, and treatment.

54.     Even an individual ***involuntarily*** admitted under MHL 9.39 is still only ***alleged*** to have a mental illness.

55.     MHL 7.09(j)(1) is overbroad in that it authorizes reporting of all individuals who are involuntarily committed pursuant to any provision of Article 9, which includes those individuals only ***alleged*** to have a mental illness.

56.     Individuals only ***alleged*** to have a mental illness are ***not*** prohibited from firearm possession.

57.    MHL 7.09(j)(1) implicates, and violates, the Second and Fourteenth Amendments.

58.    There is no historical tradition in this Nation of barring the possession of Arms for self-defense purposes, including firearms, of individuals who are merely alleged to have a mental illness.

***Barring Firearms for MHL 9.39 Admission Violates the Second and Fourteenth Amendments***

59.    In addition to the foregoing, MHL 9.39 neither contemplates nor addresses the issue of whether a person who threatens or attempts suicide is "mentally ill."

60.    New York law has recognized a critical distinction between those who end their life in a rational state of mind and those who do so as a result of a mental illness – "[s]uicide involves the deliberate termination of one's existence, while in the possession and enjoyment of his mental faculties. Self-slaughter by an insane man or a lunatic is not an act of suicide within the meaning of the law." *Hines v. Doe*, No. 951-23, 2023 WL 2320234, at *3 (N.Y. Sup. Ct. Mar. 1, 2023) (concluding that "a suicidal ideation or attempt is not mental illness per se") quoting, *Breasted v Farmers' Loan & Trust Co.*, 4 Hill 73, 75 (Sup Ct 1843); and citing, *Myers v Schneiderman*, 30 NY3d 1, 12 (2017) (implying that suicide, by definition, must bear the indicia of rationality: suicide has long been understood as "the act or an instance of taking one's own life *voluntarily and intentionally*) (emphasis supplied); The Earliest Acts and Laws of the Colony of Rhode Island and Providence Plantations 1647-1719, p 19 (J Cushing ed 1977) (noting that as early as 1647 Rhode Island made a distinction between rational suicide and suicide with mental illness: "[if a man] kills himself of a premeditated hatred against his own life: . . . his goods and chattels are the king's custom; *but in case he be an infant, a lunatic, or mad*, he forfeits nothing") (emphasis supplied).

## MATERIAL FACTS

61.     On or about September 25, 2020, Plaintiff was transported to Westchester Medical Center pursuant to MHL 9.41 for emergency admission for immediate observation and evaluation.

62.     Plaintiff was admitted to Westchester Medical Center (WMC) under to MHL 9.39 for emergency observation and evaluation.

63.     Plaintiff consistently denied any suicidal ideation during his admission to WMC.

64.     While at WMC, Plaintiff was transferred from the mental health unit to the medical unit for the assessment and treatment of chest pain.

65.     Plaintiff remained in the medical unit of WMC until his discharge on October 6, 2020.

66.     By discharging Plaintiff and not converting Plaintiff's admission to an involuntary commitment under Article 9, the mental health professionals at WMC determined that Plaintiff was not a danger to himself or others. [13]  The mental health professionals at WMC determined that Plaintiff did not meet the criteria for an involuntary commitment.

67.     Plaintiff's status at WMC was never converted to an involuntary commitment and Plaintiff was never adjudicated by a court, and Plaintiff was never found to have a mental defect warranting a designation as a dangerous person.

68.     Had the mental health professionals at WMC determined that Plaintiff was a danger to himself or others, Plaintiff would not have been discharged from WMC on October 6, 2020.

---

[13] In providing guidance related to the enactment of the SAFE Act, the New York State Psychiatric Association noted that there would be "no need to file a SAFE Act report upon [a patient's] discharge because an individual should not, at discharge, present a risk of harm to self or others." See, https://www.nyspsych.org/index.php?option=com_content&view=article&id=73:the-safe-act--guidelines-for-complying&catid=41:safe-act&Itemid=140

69.     Had the mental health professionals at WMC determined that Plaintiff was a danger to himself or others, Plaintiff would have been  involuntarily committed under MHL 9.37, which he was not.

70.     Upon his discharge from WMC, attended a follow-up appointment with the Mental Health Association of Westchester (MHA Westchester) on October 8, 2020.

71.     Plaintiff's MHA Westchester records indicate that he attended two assessment sessions where he continued to deny any suicidal ideations and denied the need for continuing mental health treatment.

72.     Plaintiff's case with MHA was closed on October 30, 2020.

73.     No mental health professional from MHA made a MHL  9.46 report about Plaintiff.

74.     As a result of Plaintiff's hospital stay, on or about October 1, 2020 the Westchester County Clerk's Office [pistol license division] was notified that:

> "The New York State Office of Mental health has notified the Division of State Police that [Plaintiff] has been either: 1) adjudicated as a mental defective; or 2) involuntarily committed to a mental institution."

75.     The Westchester County Attorney's Office (the "County") filed an administrative proceeding by way of Order to Show Cause with the Westchester County pistol licensing officer to revoke or suspend Plaintiff's New York State pistol license.

76.     The County's administrative proceeding (the "Proceeding") was assigned Index No. 00080/2020 and assigned to the Hon. Anne E. Minihan, AJSC.

77.     Plaintiff appeared for an administrative hearing before Judge Minihan and, as a result of the testimony and evidence heard and received by the Court, Judge Minihan determined

that Plaintiff remained "eligible" to possess handguns and reinstated his New York State pistol license.

78.     Judge Minihan issued an Order of Dismissal on November 4, 2020 dismissed the County's Proceeding.

79.     Upon receiving his Amended Pistol License and purchase vouchers for the return of his handguns from Judge Minihan and Westchester County, Plaintiff attempted to recover his handguns from the FFL who had been safeguarding them since the suspension of his NYS pistol license.

80.     At the gun store, Plaintiff completed ATF Form 4473, correctly indicating "No" to Question 21(f), to wit, "have you ever been adjudicated as a mental defective OR have you ever been committed to a mental institution."

81.     When the FFL submitted Plaintiff's NICS background check, NICS issued a "Deny", which prohibited the FFL from transferring the handguns back to Plaintiff. The transaction number assigned to the NICS denial was NTN: 101PTWSJL.

82.     Upon conducting a NICS inquiry, Plaintiff was advised by NICS in writing that the transaction assigned NTN: 101PTWSJL was denied because his personal identifying information "matched with a prohibiting record, which contains a similar name and/or similar descriptive features. Your transaction's prohibition is under Title 18, United States Code (U.S.C), Section 922(g)(4): "A person who has been adjudicated as a mental defective or who has been committed to a mental institution."

83.     The NICS Letter further advised that, if Plaintiff sought to correct and/or change the information in the NICS database, he would have to contact the "NICS Appeals and SAFE Act Post Office Box 66329 Albany, NY 12206 Phone: 518-549-1180" and that "No further action will

15

be taken until documentation is provided by the contributing agency or you notify the FBI that the record has been updated."

84.     Plaintiff has been prohibited from possessing and purchasing firearms because Respondents falsely informed and continue to falsely inform NICS that he is a person prohibited from purchasing, possessing and/or receiving firearms, which he is not.

85.     By reporting Plaintiff to NICS, OMH mischaracterized Plaintiff as an individual who has been involuntarily committed to a mental institution.

86.     OMH falsely communicated Plaintiff's personal identifying information to NICS as an "involuntary admission" with the specific intention of creating the impression that Plaintiff was "involuntarily committed" for the purpose of affecting and causing the forfeiture of such individual's right to possess and/or purchase firearms, including Plaintiff's.

87.     Plaintiff was neither adjudicated as a mental defective nor involuntarily committed to a mental institution.

88.     Knowing that he was not "involuntarily committed" to WMC, and in light of Judge Minihan's restoration of his pistol license, Plaintiff wrote to the SAFE Act Office to ascertain whether his personal identifying information was improperly maintained in the SAFE Act database and reported to NICS.

89.     By letter dated March 10, 2021, the SAFE Act Office informed,

> "This office is in receipt of your letter in reference to [P.D.]. Please be advised that this office maintains data submitted to the federal NICS data base pertaining to individuals who have been involuntarily admitted to a hospital in New York State. A review of that data, based on the spelling, date of birth and social security number provided, indicates that there was an involuntary admission reported by Westchester Medical Center. The admission date is September 29, 2020."

90.     Plaintiff contacted the SAFE Act Office by phone and informed that he was not involuntarily committed, not a "prohibited person," and that his pistol license had been restored by Judge Minihan after a hearing.

91.     Throughout the course of Plaintiff's communications with the SAFE Act Office, he was instructed by the SAFE Act Office that he would have to submit his hospital records and proceed through the administrative process of obtaining a Certificate of Relief from Disabilities Relating to Firearms in for the SAFE Act Office to determine whether to remove his information from the NICS database.

92.     Plaintiff did not fit the criteria for being placed in the NICS database because he was not a "prohibited person" under 18 U.S.C. 922(g). See, 27 C.F.R. 478.11.

93.     Plaintiff submitted to the OMH/SAFE Act Office's Certificate of Relief process because he was confident that, after seeing that he was not involuntarily committed, Respondents would remove his information from the NICS database.

94.     A review of Plaintiff's mental health records, which were submitted to the SAFE Act Office, demonstrates that he was not involuntarily committed to a mental institution.

95.      A review of Judge Minihan's Dismissal Order and documentation for the return of Plaintiff's firearms demonstrates that Plaintiff's right to lawfully possess handguns was restored by the Court.

96.     Plaintiff provided the SAFE Act Office with the following information, which included:

- DCJS Fingerprint Report;
- FBI Fingerprint Report;
- Application for a Certificate of Relief from Disabilities Relating to Firearms Form;
- Westchester Medical Center Records from 09/25/2020-10/06/2020;
- Mental Health Association Records-Individual Psychotherapy Records from 10/06/2020-10/30/2020;

- Four Notarized Letters of Reference; and
- Westchester County Court Order of Dismissal of the Hon. Anne E. Minihan.

97.     On August 23, 2023, the SAFE Act Office provided Plaintiff with a written determination on his application for a Certificate of Relief was denied (the "SAFE Act Denial").

98.     The SAFE Act Denial acknowledges:

> "The records which OMH transmits are **limited to persons** who have been **involuntarily committed** to a psychiatric hospital pursuant to Article 9 or 10 of the NYS Mental Hygiene Law (MHL), Article 730 or Section 330.20 of the NYS Criminal Procedure Law, Section 402 of or 508 of the NYS Correction Law or Sections 322.2 or 353.4 of the NYS Family Court Act."

99.     The SAFE Act Office denied Plaintiff's request to remove his personal identifying information and/or grant a Certificate of Relief because,

> "OMH cannot conclude that your record and reputation are such that you will not be likely to act in manner dangerous to public safety. Therefore, OMH has determined that the issuance of a certificate of relief from disabilities allowing you to purchase a firearm would be contrary to the public interest. The application for a certificate of relief from disabilities is denied."

100.     No one from the SAFE Act Office conducted a mental health evaluation of Plaintiff.

101.     Mental health professionals at WMC determined after a psychiatric evaluation and observation that Plaintiff is not a "dangerous" person, not a danger to himself or others, and that he does not fit the criteria to be involuntarily committed.

102.     Plaintiff's medical records indicate that he denied suicidal ideation, continued to deny any suicidal ideation, and that no threats to misuse or any attempt to misuse his firearms to harm himself or others were made.

103.     Based on the above, Plaintiff's personal identifying information should have been removed by Respondents from the NICS and DCJS databases because he was wrongfully

maintained in the NICS reporting database as an individual who had been involuntarily committed to a mental facility and is firearms disqualified.

104.    The continued inclusion of Plaintiff's identifying information as a "prohibited person" in the NICS and DCJS databases is violating, and will continue to violate, his Second and Fourteenth Amendment rights because he is barred from engaging in conduct that is protected by the Constitution.

105.    OMH violated Plaintiff's Second and Fourteenth Amendment rights by not removing his personal identifying information from the State database and communicating to NICS that Plaintiff is not a prohibited person after being presented with the aforementioned information and documents.

## DECLARATORY JUDGMENT ALLEGATIONS

106.    There is an actual and present controversy between the parties. Plaintiff contends that his Second and Fourteenth Amendment rights were, and are continuing to be, violated by the inclusion of his personal identifying information in the SAFE Act database and continued reporting to NICS and other third parties that Plaintiff is a prohibited person.

107.    Defendant is the proper party to be sued as the Commissioner of the New York State Office of Mental Health of has the authority to direct the removal of Plaintiff's personal identifying information from the State's mental health reporting database, which will remove such information from the NICS indexing system and any other third party agencies, granting Plaintiff the relief he seeks.

108.    Plaintiff will continue to be denied the right to purchase, possess, and/or receive any firearm so long as his personal identifying information is maintained by and in the State's mental health reporting database.

109.    Plaintiff seeks a declaration from this Court that being "admitted", whether voluntarily or involuntarily, under MHL 9.39 does not constitute an "involuntary commitment to a mental institution" for purposes of terminating the rights protected by the Second and Fourteenth Amendments.

110.    Plaintiff seeks a declaration that MHL 7.09(j) is vague and overbroad and violates the Second and Fourteenth Amendments, as applied to Plaintiff.

111.    The continuation of Defendant's policies and practices and the enforcement of MHL 7.09(j) will continue to cause violations of Plaintiff's constitutional rights.

112.    The aforementioned conduct is repugnant to the plain text of the Second Amendment and inconsistent with the historical traditions of firearms ownership in this Nation.

### INJUNCTIVE RELIEF ALLEGATIONS

113.    Defendant is causing Plaintiff to suffer an injury-in-fact by prohibiting his exercise of the rights protected by the Second and Fourteenth Amendments.

114.    Defendant's conduct has permanently banned Plaintiff's ability to purchase, possess, and/or receive firearms.

115.    Defendant's conduct is unauthorized and without any legal privilege as Plaintiff does not fit the criteria for Defendant's collection, retention, modification, and/or transmission to NICS and/or for being reported to NICS as a person prohibited from purchasing, possessing and/or receiving firearms due to an involuntary commitment to a mental institution and/or adjudication as mentally defective within the meaning of 18 U.S.C. 922(g) and/or state law.

116.    Without the requested relief, Plaintiff's constitutional rights will continue to be violated and he will continue to suffer irreparable harm.

117.    Defendant denies the allegations set forth herein.

**AS AND FOR A FIRST CONSTITUTONAL CAUSE OF ACTION**
**[Second and Fourteenth Amendments, 42 U.S.C. 1983]**

118.    Repeats and realleges paragraphs 1 through 117 as if set forth in their entirety herein.

119.    Under the theory that Defendant has, and is continuing to violate, Plaintiff's Second and Fourteenth Amendment rights. 42 U.S.C. 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment and order:

- Declaring that the continuation of Plaintiff's personal identifying information in the state NICS reporting database is a violation of Plaintiff's Second and Fourteenth Amendment rights;

- Declaring that, as applied to Plaintiff, the application of MHL 9.39 as a means to justify the inclusion of Plaintiff's personal identifying information in the state NICS reporting database violates his Second and Fourteenth Amendment rights;

- Declaring that, as applied to Plaintiff, MHL 7.09(j) is overbroad and violates his Second and Fourteenth Amendments;

- Permanently enjoining Defendant in her official capacity as Commissioner of the New York State Office of Mental Health and the Office of NICS Appeals and SAFE Act from continuing to maintain Plaintiff's personal identifying information in the state NICS reporting database and ordering the removal of Plaintiff's information therefrom;

- An award of reasonable statutory attorney's fees under 42 U.S.C. 1988;

- An award of costs and disbursements; and

- Such other, further and different relief as this Court may deem just and proper.

Dated: February 2, 2024
       Scarsdale, New York

                              THE BELLANTONI LAW FIRM, PLLC
                              *Attorneys for Plaintiff*

              By:    _____/s/_____
                     Amy L. Bellantoni, Esq.
                     2 Overhill Road, Suite 400
                     Scarsdale, New York 10583
                     (914) 367-0090 (t)
                     (888) 763-9761 (f)
                     abell@bellantoni-law.com